Bell and Matthias, JJ.,
 

 dissenting. The majority opinion holds that the motion of respondent for judgment on the pleadings should be granted.
 

 The cause is here upon a petition, an answer, a reply and the separate motions of relators and respondent for judgment on the pleadings.
 

 During the course of this dissent the Superintendent of Banks of the state of Ohio will be designated superintendent, The Union Trust Company as the bank, and the National City Bank of Cleveland as successor trustee.
 

 The record discloses the following facts: Prior to 1924 the bank owned an unimproved parcel of real estate, the original cost of which was $310,000. Later a building was erected thereon known as the “Citizens Building” in which for some time the bank operated. The highest figure at which the land and building ever
 
 *379
 
 were carried upon the books of the bank as an asset was about $1,772,000. In 1923 the bank sold the building for $1,000,000 and the book value of the remaining property was reduced to about three-quarters of a million dollars. During that same year the book value was raised to $2,000,000 and the increased valuation charged to “other income.” In 1924 the bank created out of its own property a trust estate, to wit, the land upon which the Citizens Building had been erected, named itself trustee with an annual income in excess of $13,000 per annum and sold land-trust certificates for the sum of $2,005,000 to divers and sundry persons including the relators.
 

 In June 1933 the superintendent filed a statutory
 
 ex parte
 
 proceeding in the Court of Common Pleas of Cuyahoga county, numbered 392938 upon the docket of that court, and took over the bank for liquidation.
 

 In 1934, during the course of the liquidation, the superintendent discovered the above-stated facts.
 

 In April 1935, this court decided the case of
 
 Ulmer
 
 v.
 
 Fulton, Supt. of Banks,
 
 129 Ohio St., 323, 195 N. E., 557, in which it was held that a bank and trust company is not authorized to act in the dual capacity of settlor and trustee by creating trusts out of its own securities and selling participation certificates therein to the public, and that such undertakings are opposed to a sound public policy and are invalid.
 

 The respondent and his predecessor superintendents had full knowledge of the
 
 Dimer decision
 
 and in that same year the then superintendent issued a letter or bulletin in which he notified the various open banks in Ohio to take the necessary action to dissolve any such trust. However, although he had full and complete charge of the bank, he did not dissolve the trust here involved.
 

 Prior to the
 
 Dimer decision,
 
 during the
 
 ex parte
 
 proceeding commenced by the superintendent, he ten
 
 *380
 
 dered' the resignation of the bank as trustee, which was in 1933, and secured the appointment of the National City Bank of Cleveland as successor trustee. This was done with the consent of about 86 per cent of the certificate holders.
 

 After the
 
 Ulmer
 
 decision, on or about August 3,1936, the superintendent wrote a letter to the successor trustee in the following words and figures:
 

 “* * * The case of
 
 Ulmer
 
 v.
 
 Fulton, Superintendent of
 
 Banks, 129 Ohio St., 323/has raised the question as to whether or not I have an interest in said premises under the rule of law set forth in that decision, and there is also the question as to what, if any, my interest is under the terms of said Agreement and Declaration of Trust dated August 15, 1924. Neither my interest in said Citizens Building Property, if any, nor the rights of the holders of certificates of equitable ownership issued under said Agreement and Declaration of Trust dated August 15, 1924, have as yet been determined. Until such time as such rights and interests are determined, it is mutually to our advantage that the value of said premises be maintained and that as much income as possible shall be derived therefrom.
 

 “Accordingly, I hereby agree that until such rights and interests are determined, The National City Bank of Cleveland in its capacity as successor trustee under said Agreement and Declaration of Trust dated August 15, 1924, may take such steps and perform such acts as it, in its discretion, may deem advisable to preserve or enhance the value of said Citizens Building property or to obtain income therefrom, including, if such step seems advisable, the termination of said lease of June 25, 1923, #
 
 * *
 
 and the taking possession of said property, and including the making, ratification or consent to leases or modifications of leases of said premises or portions thereof for a term of three years or less, and such leases or modifications of leases
 
 *381
 
 for a terra of more than three years, the terms of which I shall hereafter approve in writing, and including other steps and acts incidental to the management of said property, it being understood between us that the taking of such steps and the doing of such acts shall be without prejudice to the rights of the undersigned or of any holder of a land-trust certificate of equitable ownership issued under said Agreement and Declaration of Trust dated August 15,1924, or of The National City Bank of Cleveland in its capacity as such Successor Trustee or otherwise.
 

 “It is further understood that in the event it is finally determined this parcel of real estate is an asset of The Union Trust Company, I will honor all leases made by you as Successor Trustee covering a term of three years or less and those covering a term of more than three years, which I shall hereafter in writing approve. * # *”
 

 Who will say that the superintendent did not then know and fully appreciate that the trust was invalid?
 

 No action was. taken by the superintendent to set aside the trust and thereafter in 1942, these relators filed an action as plaintiffs, on behalf of themselves and all other certificate holders similarly situated, in the Court of Common Pleas of Cuyahoga county, numbered 519986, making William L. Hart, as Superintendent of Banks, the National City Bank of Cleveland, the successor trustee, The Union Trust Company and Union Properties, Inc., defendants.
 

 In that action the plaintiffs (relators here) prayed that the trust be declared void; that the National City Bank of Cleveland be required to restore the trust property and to account for all money and property received from the trust property to the superintendent; that plaintiffs be granted judgment for $2,000,000 with interest; that the superintendent be required to pay the land-trust certificate holders the liquidating
 
 *382
 
 dividends theretofore declared, together with interest; and that a receiver he appointed.
 

 In the answer of the superintendent in that case, as a fourth defense, it was averred that the plaintiffs did not file claims with him in accordance with an act passed by the G-eneral Assembly, commonly known as' the McIntyre Act, and that by reason thereof the claims of the plaintiffs were forever barred.
 

 The Court of Common Pleas decided the cause in favor of defendants. Thereupon an appeal on questions of law and fact was perfected to the Court of Appeals which likewise entered a decree in favor of the defendants. The Court of Appeals expressly declined to decide whether the trust was invalid, but rendered judgment in favor of defendants upon the ground that plaintiffs had failed to comply with the McIntyre Act. Upon appeal to this court, the judges being equally divided (one judge not participating), the judgment of the Court of Appeals was affirmed under the provisions of Section 2, Article IV of the Constitution.
 

 Thereafter relators instituted the present action in this court, praying that a writ of mandamus issue requiring the superintendent to treat the trust as void and to set aside the trust as void; and for such further orders in the premises as may be just and proper. •
 

 To the petition the respondent filed a general demurrer upon the ground that the court was without jurisdiction and that the petition did not state a cause of action. The demurrer was overruled. An answer was then filed setting forth ten defenses, among others,
 
 a full and complete remedy at law, res judicata, the McIntyre Act, consent of certificate holders to appointment of a successor trustee and no beneficial interest.
 
 A reply was filed to the answer denying some of the defenses and asserting that others are insufficient in law.
 

 This record discloses that the superintendent set-
 
 *383
 
 tied the claims of some of the certificate holders, thus recognizing the invalidity of the trust as to them.
 

 That in brief is the situation presented by the record in the instant case.
 

 When this court overruled the demurrer to the petition in this case, that ruling constituted a holding that this court has jurisdiction and that the petition does state a cause of action. How then can it be said-now that respondent is entitled to judgment on the pleadings ?
 

 We shall first direct our attention to a consideration of the question of
 
 res judicata.
 
 The proceeding filed by the superintendent in the Common Pleas Court of Cuyahoga county, numbered 392938, cannot be
 
 res judicata
 
 of any question. That proceeding was
 
 ex parte
 
 and the statute expressly prohibits any one being made a party therein. Section 710-90, General Code. The doctrine of
 
 res 'judicata
 
 applies only to an adversary proceeding and only where the same issues and the same parties or their privies are involved.
 

 The prayer of the petition in the action filed in the Common Pleas Court of Cuyahoga county, numbered 519986, wherein the relators here were plaintiffs and the superintendent and others were defendants, clearly discloses that the relief prayed for was not the same as prayed for here. There the only relief prayed for against the superintendent was that he be required to pay the certificate holders the liquidating dividends theretofore declared, together with interest.
 

 The only question there decided was that plaintiffs, having failed to file claims with the superintendent as required by the McIntyre Act, were not entitled to the relief prayed for. It is obvious from an examination of the allegations of that petition that the cause of action there was not the same as the cause of action in the instant case. The cause of action being different the doctrine of
 
 res judicata
 
 cannot be asserted here.
 

 
 *384
 
 In
 
 Norwood
 
 v.
 
 McDonald,
 
 142 Ohio St., 299, 52 N. E. (2d), 67, it was held:
 

 “6. Where a judgment is relied on by way of evidence as conclusive
 
 per se
 
 between the parties in a subsequent suit, it must appear by the record of the former suit that the particular controversy sought to be precluded was
 
 therein actually or necessarily tried and determined.”
 
 (Emphasis added.)
 

 The relators and other certificate holders, as alleged in the petition in the instant case, have invested over $2^000,000 in a land trust and are seeking in every way possible to have the invalidity of that trust determined. The decision that they have no beneficial interest in having that question adjudicated is beyond our comprehension.
 

 The majority assert that the relators have or had an adequate remedy at law and therefore cannot prevail here. When they attempted to assert the invalidity of the trust in the Common Pleas Court, case numbered 519986, they were informed by the judgment of that court and upon appeal by the judgment of the Court of Appeals that because they had not filed claims with the superintendent as required .by the McIntyre Act the question of the validity of the trust would not be decided. Hence, there was no adjudication
 
 di
 
 that issue. Until the validity of the trust has been determined, the relators could not file a valid claim with the /Superintendent.
 

 In the last above-numbered case plaintiffs attempted to assert the invalidity of the trust and the Court of Appeals specifically declined to pass upon that question. The validity of the trust being- the only issue involved here, that question was never passed upon or determined.
 

 Also in
 
 Norwood
 
 v.
 
 McDonald, supra,
 
 it was held, in paragraph three of the syllabus: ■
 

 “3. A point or a fact which was actually and direct
 
 *385
 
 ly in issue in a former action and
 
 was there passed upon and determined by a court of competent jurisdiction
 
 may not be drawn in question in any future action between the same parties or their privies, whether the cause of action in the two actions be identical or different.” (Emphasis added.)
 

 Section 12283, General Code, provides as follows:
 

 “Mandamus is a writ issued, in-the name of the state, to an inferior tribunal,
 
 a corporation,
 
 board,
 
 or person,
 
 commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.” (Emphasis added.)
 

 The superintendent by virtue of the statutes has the duty to supervise all banks and the responsibility to see that they are conducted according to law. If not so conducted he is authorized to take over the operation of the bank, compel compliance with law or to liquidate the bank. (Sections 701-1 to 710-144, both inclusive, General Code.)
 

 The statute law specially enjoins those duties upon the superintendent.
 

 Section 710-91, General Code, provides in part as follows:
 

 “Immediately upon the posting of notice on the door or doors of a bank by the Superintendent of Banks, as provided in Section 710-90 of the General Code, the possession of all assets and property of such bank of every kind and nature, wheresoever situated, shall be deemed to be transferred from such bank to, and assumed by the Superintendent of Banks; and such posting shall of itself, and without the execution or delivery of any instruments of conveyance, assignment, transfer, or endorsement,
 
 vest the title to all such assets and property in the Superintendent of Banks.”
 
 (Emphasis added.)
 

 By virtue of that section when the superintendent took over the bank for liquidation in 1933, the title to
 
 *386
 
 all the bank’s property at once vested in the superintendent.
 

 If the trust was invalid under the
 
 Ulmer decision
 
 the property involved was the property of the superintendent.
 

 Section 710-95, General Code, provides in part as follows:
 

 “The Superintendent of Banks, upon taking possession of the business and property of any bank, shall have, exercise and discharge the following powers, authority and duties, without notice or approval of court, but subject to the provisions of this chapter, to wit: * *
 

 “3. To exercise all the rights and powers of such bank under or by virtue of any mortgage * * * contract * * * or other instrument.”
 

 By virtue of the last-quoted section it was the duty of the superintendent to proceed to have adjudicated the validity of the trust theretofore created by the bank and if found invalid to recover the property.
 

 That he recognized, under the
 
 Ulmer decision,
 
 it was his duty to see that any trust coming within the,bar of that decision should be set aside is best evidenced by the bulletin which he sent to all open banks in the state, and it seems clear that under the provisions of Section 710-95, General Code, as to any bank under his immediate control, it was his duty to take appropriate action to set aside such a trust.
 

 We cannot subscribe to the conclusion that because a successor trustee was appointed, prior to the
 
 Ulmer decision,
 
 with the consent .of 86 per cent of the certificate holders, the rights of such certificate holders were in anywise affected thereby.
 

 The facts asserted by relators, all of which must be accepted as true for the purpose of disposing of respondent’s motion, disclose that relators have no adequate remedy at law; that the duty to have the validity of this
 
 *387
 
 trust determined is specially enjoined by law upon the superintendent as to any bank of -which he has taken possession under the authority conferred by Section 710-89, General Code; and that he has failed, in the performance of that duty and therefore they have established a -clear legal right to the issuance of the writ.
 

 This case should not be disposed of upon motion. Relators should be granted full opportunity to prove or attempt to prove the facts alleged and the respondent should be given an equal opportunity to present his side of the controversy so that the court could dispose of the matter upon its merits, particularly in view of the admitted facts that the bank made a profit of over $1,000,000 by the sale of land-trust certificates upon land which was its own property previous to the creation of the trust; that from 1924 to 1933 when it resigned as trustee it was enriched to the extent of about $100,000 additional; that it reserved to itself the sum of $10,000 per annum in perpetuity; and that it restricted the use of the Citizens Building located upon the land placed in trust to other than banking purposes for its own further benefit and profit, all of which acts were either expressly or by clear implication condemned in the
 
 Ulmer case.
 

 Therefore, we dissent from the judgment.